IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN RUBASH,

                Plaintiff,             OPINION AND ORDER

   v.

                                        21-cv-447-wmc

VOLKSWAGEN GROUP OF
AMERICA, INC. and AMERICAN
CREDIT ACCEPTANCE, LLC.

                Defendants.

---

Plaintiff Ryan Rubash alleges that the actions of American Credit Acceptance, LLC ("ACA") and Volkswagen Group of America, Inc. following his purchase of a vehicle violated multiple state and federal laws. In response, defendant ACA has moved to compel arbitration on the claims against it. (Dkt. #5.) For the reasons given below, the court grants the motion to compel arbitration and will stay all claims against ACA pending arbitration.

BACKGROUND[1]

In 2020, plaintiff Ryan Rubash purchased a used Volkswagen Jetta on credit from CarMax Auto Superstores, who then assigned its interest in the purchase contract to American Credit Acceptance.[2] Soon after, the car allegedly began having mechanical

---

[1] For purposes of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

[2] While the purchase contract was not attached to plaintiff's pleading, ACA submitted an affidavit (dkt. #7) providing a copy of the contract and swearing that it is a true and correct business record. Neither party has challenged the veracity of the document provided. "District courts routinely

problems. Plaintiff then contacted Volkswagen for assistance under the car's manufacturer warranty. When the issues continued, Volkswagen allegedly advised Rubash to stop making payments on the car because ACA would "switch out his vehicle." However, after Rubash stopped making his car payments, rather than switch out the car, ACA placed the car in repossession status "due to missed payments."

In addition to notifying him of this change in status, ACA also alleged alerted Rubash that his car would be taken out of repossession if he paid $505, which Rubash did. (*Id.*) Rubash alleges what that notice did *not* tell him was that: (1) he was also obligated to resume making his monthly payments; (2) failure to do so would constitute a default under the contract; and (3) he had a right to cure the default. After two more months of not making payments, ACA repossessed his car. Rubash then brought this suit against Volkswagen and ACA.

The purchase contract between CarMax and Rubash contained an arbitration provision, which states in relevant part that:

> [Y]ou and we agree to be bound by the terms of this Arbitration Provision. "[W]e," "us" and "our" mean the Seller . . . or anyone to whom the Seller transfers its rights under the Contract. . . .
> IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY . . . .
> a. **What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the

---

consider agreements containing arbitrations provisions referred to within, but not attached to, the complaint . . . if the proponent of arbitration properly authenticates the document containing an arbitration provision through an affidavit or otherwise." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015). Because ACA has authenticated the contract and it is properly before the court.

> Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to: . . .
> • Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
> • Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
> • Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract . . . .
> **Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act . . . .

(Def.'s Br. (dkt. #6) 2-3.) (emphasis original).

## OPINION

### I. Arbitration Agreement

Enforcement of an arbitration clause is governed by the Federal Arbitration Act ("FAA") 9 U.S.C. § 1, *et seq.*, which states in relevant part that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The United States Supreme Court has further held that the FAA evinces a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). To that end, the FAA "leaves no place for the exercise of discretion" and mandates that courts "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis original). Finally, any doubts as to whether the arbitration

3

clause is susceptible to an interpretation that would cover the asserted dispute should be "resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Still, the party seeking to compel arbitration has the burden of showing that the parties are bound by the arbitration clause. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "At bottom . . . arbitration is contractual." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Thus, "[w]hether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, plaintiff does not deny that he entered into a valid arbitration agreement with ACA, nor does he deny that the claims he is bringing against it fall under that agreement. (Pl.'s Opp. (dkt #8) 4.) Instead, plaintiff argues that he cannot be compelled to arbitrate his claims against Volkswagen, as it is *not* a party to the contract. (*Id*.) However, ACA is not arguing to compel arbitration as to plaintiff's claims against Volkswagen; rather, it is moving to compel arbitration of plaintiff's claim against ACA alone. (Def.'s Reply (dkt. #10) 1.) Given that plaintiff has not denied being a party to the arbitration agreement with ACA and that his claim is covered, the court need not spend more time on these requirements.

## II. Waiver

This leaves plaintiff's arguments for why compelling arbitration with ACA would be unjustified despite his agreement to do so. Plaintiff's first argument is that ACA waived

4

its right to arbitrate, either through litigating the case fully enough that waiver is appropriate or failing to properly commence arbitration. (Pl.'s Opp.'n (dkt. #8) 4-5.)

The "contractual right to arbitration can be waived . . . either explicit[ly] or inferred from a party's actions." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). In assessing the party's behavior, courts may look at "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id*. The main question is whether the party "manifested an intention to resolve the dispute through the processes of" litigation. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).

In this case, there is no evidence that ACA "manifested an intention" to litigate the dispute in this court. Plaintiff alleges that ACA waited 55 days from receiving notice of plaintiff's claims before compelling arbitration. (Pl.'s Opp.'n (dkt. #8) 4-5.) Additionally, plaintiff argues that ACA's participation in state court proceedings constituted waiver. *Id*. at 6. This argument, though, vastly overstates ACA's participation in the litigation to date. To get to 55 days, Rubash begins counting from a fax sent to ACA, weeks before he brought ACA into the current suit. (Def.'s Reply (dkt # 10) 2.) Moreover, while ACA participated to some extent in the litigation, it was merely to facilitate an inspection of the vehicle for Rubash and Volkswagen, to join in removing the matter to federal court and to dispute jurisdiction. (*Id*. at 3.) Five days after removing the present case to federal court, ACA moved to compel arbitration. (*Id*.)

While plaintiff cites *Cabinetree* in support of finding waiver, the case is unhelpful to his arguments. In *Cabintree*, the party moving for arbitration had already participated in discovery for six months, had received around two thousand documents of discovery, and sought to arbitrate only five months before trial was to begin. 50 F.3d at 389. As the Seventh Circuit explained on those facts, "[t]here is no plausible interpretation of the reason for the delay except that [defendant] initially decided to litigate its dispute with [plaintiff]." *Id*. at 391. The facts here are not nearly so egregious. ACA was not added as a defendant in the state court proceeding until June 17, 2021, and ACA removed the case to federal court within a month. (Notice of Removal (dkt. #1-2) 21.) After removal to this court, its motion to arbitrate was filed within days. (dkt. #5.) By comparison, the Seventh Circuit has declined to force litigation when cases are much further along. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011) (finding that a "party does not waive its right to arbitrate by filing a motion to dismiss" and that a 2-year delay did not constitute waiver); *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (finding that an 18-month delay did not constitute waiver). Given that there is nothing to suggest that ACA intended to participate in this litigation to date, the court rejects this waiver argument.

As an alternative, plaintiff also appears to suggest that ACA failed to follow its own procedures in commencing arbitration, focusing on language in the agreement which states, "Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute." (Pl.'s Opp.'n (dkt. #8) 5.) While ACA did not formally send a separate, written notice of dispute, it did formally file the

6

pending motion. (*Id.*) As an initial matter, plaintiff ignores the agreement's use of the discretionary term "may" require any claim to be arbitrated by sending notice. This would suggest that such notice is *one* way to initiate arbitration, presumably where the parties have reached an impasse and one of them wants to arbitrate *rather than* filing a lawsuit. Moreover, since the FAA and Federal Rules of Civil Procedure plainly contemplate the filing of a motion to compel in response to a party being sued over a matter, federal law at least recognizes this as an alternative method to give notice. Regardless, the court agrees with defendant that the obvious purpose of written notice is to "describe the nature and basis of the Claim and . . . set forth the specific relief sought," (Def.'s Reply (dkt #10) 5), which its motion to compel arbitration certainly does. Accordingly, absent more definite language in the parties' agreement, the court is not willing to ignore a valid, binding arbitration agreement based on the method of notice chosen, particularly given that plaintiff's response to the motion shows he had actual notice of the claim and demand to arbitrate.

### III. Inconsistent Rulings

Plaintiff also claims that he would be unduly prejudiced if he were forced to arbitrate, as his claims against ACA and Volkswagen are strongly intertwined, and compelling arbitration could lead to inconsistent verdicts. (Pl.'s Opp.'n (dkt. #8) 8.) While the court is sympathetic to this argument, the proper solution is not to deny arbitration. In fact, plaintiff points to *no* case law that supports denying arbitration out of

7

fear of inconsistent rulings.[3] Instead, the Seventh Circuit has found "that a district court should stay an entire suit pending arbitration if there is a serious danger (should it fail to do so) of inconsistent rulings or needless duplication of effort." *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 418 (7th Cir. 2014) (*citing Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966 (7th Cir. 2007)). Indeed, "[f]or arbitrable issues, a § 3 stay is mandatory." *Volkswagen*, 474 F.3d 966 at 971. The only question, therefore, is not whether the court should compel arbitration of plaintiff's dispute with ACA, but whether it should just stay the claims against ACA, or the suit in its entirety.

"The factors that bear on this inquiry include 'the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays.'" *Id*. at 972 (*quoting AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001)). In this case, the claims against Volkswagen and ACA are not so entangled that a full stay is necessary. Plaintiff's first amended complaint levels claims against ACA for violations of Wis. Stat. § 421.108, Wis. Stat. s § 427.104(1)(j), illegal repossession, and unconscionability. (Notice of Removal (dkt. #1-A) 27-29.) Of those four claims, only the claim of unconscionability mentions Volkswagen at all, arguing that the conduct of both defendants was unconscionable. (*Id*. at 29.)

---

[3] Plaintiff also suggests that arbitration may "unfairly" lead to issue-preclusion in his claims against Volkswagen. However, plaintiffs cite a case in the Sixth Circuit holding that issue-preclusion following arbitration is appropriate, *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625 (6th Cir. 2014), without suggesting that issue-preclusion may be grounds to *deny* arbitration. Indeed, any time plaintiff proceeds to resolve a dispute through litigation, issue preclusion as to others is a risk.

As such, it is hard for the plaintiff to argue that his claims against ACA are inextricably connected to his claims against Volkswagen. Certainly, all claims arise from the same broad, series of events, but there is little overlap factually or legally between them. Plaintiff does argue that a finding of unconscionability against ACA in the arbitration *could* be inconsistent with the court's finding against Volkswagen on the same claim. (Pl.'s Opp.'n (dkt. #8) 8.) However, the underlying facts as to each defendant's conduct is sufficiently different to make this unlikely. Indeed, the arbitrator is unlikely to even address Volkswagen's allegedly unconscionable conduct given that it is not a part of the arbitration and is only tangential to ACA's arguable liability. Even if an arbitration decision on ACA's liability were to include comments about that separate claim, plaintiff still has numerous consumer protection claims that do *not* rely on Volkswagen's alleged advice to stop paying the loan. (Notice of Removal (dkt. #1-A) 26-29.) For those reasons, there is no "serious danger . . . of inconsistent rulings" and a full stay of all proceedings pending arbitration is not indicated. *GEA*, 740 F.3d 411 at 418.

## ORDER

IT IS ORDERED that:

1) Defendant's motion to compel arbitration (dkt. #5) is GRANTED;

2) All claims against Defendant American Credit Acceptance, LLC, are STAYED pending the resolution of arbitration.

Entered this 29th day of March, 2022.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

9